IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 06-19 |
| | : | |
| ANTHONY MARK BIANCHI | : | |

**MEMORANDUM AND ORDER**

**Kauffman, J.**                                                                                                      **May 22, 2007**

Now before the Court is Defendant's Motion to Dismiss the Second Superseding Indictment (the "Indictment"). For the reasons set forth below, the Motion will be denied.

**I.      BACKGROUND**

On February 1, 2007, a grand jury sitting in the Eastern District of Pennsylvania issued the Indictment charging Defendant, an American citizen, with conspiracy to engage in illicit sexual conduct in foreign places in violation of 18 U.S.C. § 2423(e) (Count One); traveling with the intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) (Counts Two, Four, Six, Eight, and Nine); engaging in illicit sexual conduct in foreign places in violation of 18 U.S.C. § 2423(c) (Counts Three, Five, Seven, and Ten); and using a facility in foreign commerce to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (Counts Eleven and Twelve).

The Indictment alleges that Defendant traveled overseas on five occasions to engage in illicit sex with underage boys. According to the Indictment, Defendant's modus operandi was to have his co-conspirator and translator, Ion Gusin, introduce him to the boys. See Indictment at 2-6. After becoming acquainted, Defendant would attempt to induce the boys into consensual sex

1

through gifts and money, or he would attempt to rape them.

## II. ANALYSIS

Defendant has filed a Motion to Dismiss the Indictment on three constitutional grounds. First, he argues that the charges against him violate his right to substantive due process. Second, he argues that he cannot receive a fair trial in the United States in violation of his right to procedural due process. Third, he argues that 18 U.S.C. § 2423(c) exceeds Congress's power to regulate commerce with foreign nations.

### A. Substantive Due Process

The Fifth Amendment's guarantee of "due process of law" includes a substantive component, which forbids the government to infringe certain "fundamental" liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. Collins v. Harker Heights, 503 U.S. 115, 125 (1992); United States v. Salerno, 481 U.S. 739, 745 (1987).

#### 1. Lack of Nexus

Defendant first asserts that substantive due process requires the Government to demonstrate a sufficient nexus between his conduct and the United States to ensure that extraterritorial application of the charged statutes "would not be arbitrary or fundamentally unfair." He relies on a line of cases decided by the Ninth Circuit. See, e.g., United States v. Davis, 905 F.2d 245, 249 (9th Cir. 1990). The Third Circuit, however, has explicitly declined to follow the cases cited by Defendant. See United States v. Martinez-Hidalgo, 993 F.2d 1052, 1056 (3d Cir. 1993) ("We decline to follow Davis as we see nothing fundamentally unfair in applying . . . [a criminal law] extraterritorially without regard for a nexus between a defendant's

conduct and the United States."). The Court has held open the possibility that a nexus may be required to criminalize extraterritorial conduct if that "conduct were generally lawful throughout the world." Id. But that is not the situation here. The sexual abuse of children is universally condemned. See Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution and Child Pornography, G.A. Res. 54/263, Annex II, 97th plen. mtg., U.N. Doc. A/RES/54/263/Annex II (Mar. 16, 2001), discussed infra.

### 2. Statutes Punish Mere Thinking or Communication

Defendant next argues that § 2423(b) and § 2422(b) violate substantive due process because they criminalize no more than a preparatory act without any requirement that the actual substantive crime be committed. In other words, these statutes do not require "a sufficient nexus between the travel or communication and the [illicit sex] so that the necessary 'intent' . . . may be said with confidence to be the intent to commit the actual proscribed sexual conduct." Defendant's Due Process Brief at 10.

This argument has been rejected by the Third Circuit with respect to § 2423(b). In United States v. Tykarksy, 446 F.3d 458 (3d Cir. 2006), the Court explained that § 2423(b) does not prohibit thinking immoral thoughts while traveling. Rather, the travel must be for "the purpose of engaging in any illicit sexual conduct." 18 U.S.C. 2423(b). "By requiring that the . . . travel be 'for the purpose of' engaging in illicit sexual activity, Congress has narrowed the scope of the law to exclude mere preparation, thought or fantasy; the statute only applies when the travel is a necessary step in the commission of a crime." Tykarksy, 446 F.3d at 471.

This reasoning applies equally to § 2422(b). That section prohibits using a means or facility of interstate or foreign commerce to "knowingly persuade[ ], induce[ ], entice[ ], or

coerce[ ] any [minor], to engage in [illicit sex], or attempt[ ] to do so." 18 U.S.C. § 2422(b). By requiring that the means of foreign commerce be used to "knowingly induce, entice, or coerce" a minor to engage in illicit sex, Congress narrowed the scope of the law to exclude mere preparation or thought.

### 3. Fundamental Right to Travel

Finally, Bianchi contends that Section § 2423(b) criminalizes mere travel in violation of his fundamental right to travel. It is well-established that "the right to travel is an aspect of liberty that is protected by the Due Process Clause[]" of the Fifth Amendment. Jones v. Helms, 452 U.S. 412, 418 (1981). No federal court, however, has held that an individual has a right to travel for an illicit purpose. Furthermore, the Third Circuit has stated that "even [assuming] the proposition that § 2423(b) interferes with [the] fundamental right to travel, Congress clearly has a compelling interest in punishing individuals who travel . . . to engage in illicit sexual activities with minors, and § 2423(b) is narrowly tailored to serve that interest." Tykarksy, 446 F.3d at 472 (internal citations omitted).

### B. Procedural Due Process (Fair Trial)

Defendant argues that a fair trial in the United States is impossible. U.S. Const. amend. V; Strickland v. Washington, 466 U.S. 668, 684-685 (1984) ("[t]he Constitution guarantees a fair trial through the Due Process Clauses . . . [and] it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment"). The right to procedural due process is a flexible standard that requires a fact specific inquiry. See Lassiter v. Dep't of Social Services, 452 U.S. 18, 24 (U.S. 1981) ("Due process has never been . . . precisely defined. . . . [It] is not a technical conception with a fixed content unrelated to time, place, and circumstances.") (internal

citations omitted).

### 1.    Defendant's Ability to React to the Government's Case at Trial

Defendant first asserts that Philadelphia's distance from Moldova will make it impossible for him to react to the Government's case at trial. He asserts that once trial is underway, his lawyers will have no opportunity to collect rebuttal evidence or to find rebuttal witnesses. According to Defendant, the only remedy would be a series of lengthy and disruptive continuances that would allow his lawyers to fly back and forth to Moldova during the trial.

However, the Court has ordered the Government to take extraordinary measures to ensure that Defendant has the opportunity to mount an affirmative defense. Recognizing the unique circumstances of this case, the Court has ordered production of all Jencks Act material, in addition to any other discovery, months in advance of trial. See Memorandum and Order, dated 12/01/2006 (docket no. 55). Additionally, the Government has produced the entire Moldavian police and court file from that country's investigation of Defendant and his alleged co-conspirator Ion Gusin. These files contain victim statements, victim testimony at Gusin's trial, and a large volume of other materials. Together, these documents provide Defendant with a detailed roadmap of the Government's case. Accordingly, Defendant has an adequate opportunity to prepare a rebuttal case in advance of trial.

### 2.    Witnesses

Defendant next contends that he cannot present an affirmative defense because he is unable to compel the attendance of witnesses who reside in Moldova. The Sixth Amendment provides that the accused shall have "compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. This means, "at a minimum, that criminal defendants have the right to

the government's assistance in compelling the attendance of favorable witnesses at trial." Pennsylvania v. Ritchie, 480 U.S. 39, 56 (1987).

Defendant asserts the necessity to compel witnesses from Moldova and that the Court has no authority to do so.  See, e.g., United States v. Theresius Filippi, 918 F.2d 244, 246 n.2 (1st Cir. 1990) ("The United States has no subpoena power over a foreign national in a foreign country.").  The possibility that there may be material defense witnesses in foreign countries who cannot be reached by the subpoena power of the Court, however, does not render the Indictment unconstitutional.  Convictions "are not unconstitutional under the Sixth Amendment even though the United States courts lack power to subpoena witnesses, (other than American citizens) from foreign countries." United States v. Zabaneh, 837 F.2d 1249, 1259-1260 (5th Cir. 1988); see also United States v. Greco, 298 F.2d 247, 251 (2d Cir. 1962), cert. denied 369 U.S. 820 (1962); United States v. Moussaoui, 382 F.3d 453, 463 (4th Cir. 2004).  "Otherwise any defendant could forestall trial simply by specifying that a certain person living where he could not be forced to come to this country was required as a witness in his favor."  United States v. Haim, 218 F. Supp. 922, 926 (S.D.N.Y. 1963).[1]

### 3. Physical Evidence

Finally, Defendant contends that he cannot receive a procedurally fair trial in the United States because most of the physical evidence against him comes from abroad and, thus, is difficult to access.  This, he argues, violates his Sixth Amendment right to offer exculpatory evidence.  See Pennsylvania v. Richie, 480 U.S. at 56 (holding that the Sixth Amendment's right

---

[1] The Government has offered to assist Defendant to secure permission for his witnesses to enter the United States and to help Defendant memorialize through depositions the testimony of witnesses who cannot or will not leave Moldova.

to compel and offer favorable witnesses includes the "right to put before a jury evidence that might influence the determination of guilt").

Defendant admits that it is constitutional and routine for the Government to prosecute cases where most of the physical evidence is located outside the United States.  See, e.g., United States v. Yousef, 327 F.3d 56, 111-115 (2d Cir. 2003).  He distinguishes those prosecutions, however, on the basis that either (1) there was no better place to prosecute, or (2) the harmful conduct overseas threatened specific harm in the United States.  Without one of those justifications, Defendant argues, a trial that is far removed from the relevant physical evidence would violate his procedural due process rights.

The fact that Defendant also could be prosecuted in Moldova has no relevance to whether he can receive a procedurally fair trial in the United States.  What is important is Defendant's ability adequately to collect evidence for a trial in the United States.  This Court has taken extraordinary steps, such as ordering the early production of Jencks Act material, to ensure that Defendant has a sufficient opportunity to collect and present evidence at trial.

Similarly, Defendant's argument that a cross-border crime cannot be tried fairly in the United States unless it threatens "specific harm" has been rejected by the Third Circuit.  In United States v. Martinez-Hidalgo, 993 F.2d 1052, 1056 (3d Cir. 1993), the Court held that, unless a defendant's conduct is generally lawful throughout the world, no nexus to the United States is required for Congress permissibly to regulate extraterritorial criminal conduct.

IV.     **Foreign Commerce Clause**

Defendant challenges Congress's constitutional authority to enact 18 U.S.C. § 2423(c).[2] At issue is whether § 2423(c) exceeds Congress's constitutional power to regulate foreign commerce.  U.S. Const. art. I., § 8, cl. 3 (authorizing Congress "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes.").  Because of "due respect for the decisions of a coordinate branch of Government," the Court will find a statute unconstitutional "only upon a plain showing that Congress has exceeded its constitutional bounds."  Morrison, 529 U.S. at 607.

As a threshold matter, the Court notes that Congress's authority under the Foreign Commerce Clause is broad.  See Japan Line Ltd. v. County of Los Angeles, 441 U.S. 434, 448 (1979) ("Although the Constitution, Art. I, § 8, cl. 3, grants Congress power to regulate commerce 'with foreign Nations' and 'among the several States' in parallel phrases, there is evidence that the Founders intended the scope of the foreign commerce power to be the greater.").  Where the Supreme Court has limited Congress's authority to regulate commerce, the fundamental concern has been with protecting the sovereignty of the states against the federal government.  See, e.g., United States v. Lopez, 514 U.S. 549, 580 (1995) ("The statute before us upsets the federal balance to a degree that renders it an unconstitutional assertion of the commerce power.") (O'Connor, J. concurring); United States v. Clark , 435 F.3d 1100, 1111 (2006), cert. denied 167 L. Ed. 2d 772 (April 16, 2007) ("Regardless of whether the subject matter is drugs, gender-motivated violence, or gun possession, a prominent theme runs

---

[2] "Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution."  United States v. Morrison, 529 U.S. 598, 607 (2000).

throughout the interstate commerce cases: concern for state sovereignty and federalism."). By contrast, "the principle of duality in our system of government does not touch the authority of the Congress in the regulation of foreign commerce." Bd. of Trustees of Univ. of Ill. v. United States, 289 U.S. 48, 57 (1933).[3] When the Supreme Court has considered the Foreign Commerce Clause in other contexts, it has emphasized Congress's broad and plenary authority. See Clark, 435 F.3d at 1113 (citing cases that demonstrate the Supreme Court "has been unwavering in reading Congress's power over foreign commerce broadly").

Having determined that Congress has broad powers to legislate in the arena of foreign commerce, the Court holds that 18 U.S.C. § 2423(c) is a constitutional exercise of that power as applied to Defendant. The statute applies only to American citizens or permanent residents who travel in foreign commerce. Defendant is charged with engaging in illicit sex acts that allegedly occurred on trips where he flew on international commercial flights to Moldova, Romania, or Cuba, and then flew back to the United States. These types of illicit sex acts have been vigorously and uniformly condemned by the international community. See Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution and Child Pornography, G.A. Res. 54/263, Annex II, 97th plen. mtg., U.N. Doc. A/RES/54/263/Annex II (Mar. 16, 2001). The Optional Protocol, which has been ratified by 119 countries, including the

---

[3] The Indian Commerce Clause has also been interpreted to give Congress broad power to legislate. See Cotton Petroleum Corp. v. New Mexico, 490 U.S. 163, 192 (1989) ("[T]he central function of the Indian Commerce Clause is to give plenary power to legislate in the field of Indian affairs."). While the Indian Commerce Clause and the Interstate Commerce Clause are parallel phrases, the Supreme Court has justified its different reading of the Indian Commerce Clause by highlighting the lack of federalism concerns. See id. at 192 ("[T]he Interstate Commerce Clause . . . is premised on a structural understanding of the unique role of the States in our constitutional system that is not readily imported to cases involving the Indian Commerce Clause.").

United States, Moldova, Romania, and Cuba, requires that the sexual exploitation of children be fully covered by a signatory's national criminal law, "whether such offenses are committed domestically or transnationally."  Id.

Accordingly, because Defendant has failed to make "a plain showing that Congress has exceeded its constitutional bounds" in enacting 18 U.S.C. 2423(c), his Foreign Commerce Clause challenge will be denied.

## V. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss the Indictment will be denied.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.     : | CRIMINAL NO. 06-19 |
| : | |
| ANTHONY MARK BIANCHI : | |

## ORDER

      **AND NOW** this   22nd   day of May, 2007, upon consideration of Defendant's Motion to Dismiss the Second Superceding Indictment (docket no. 50), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **DENIED**.

                                                             BY THE COURT:

                                                            /s/ Bruce W. Kauffman
                                                           **BRUCE W. KAUFFMAN,   J.**