IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ANTHONY BIANCHI, | : | CRIMINAL ACTION |
| --- | --- | --- |
|  | : | NO. 06-19 |
| Petitioner, | : |  |
|  | : | CIVIL ACTION |
| v. | : | NO. 12-363 |
|  | : |  |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Respondent. | : |  |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          November 14, 2012

Anthony Mark Bianchi (Petitioner) is a federal prisoner incarcerated at USP-Marion in Marion, Illinois. Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (§ 2255 Motion) arguing that he received constitutionally ineffective assistance at trial and was convicted under an unconstitutional statute. ECF No. 296.

For the reasons set forth below, the Court will deny and dismiss with prejudice the motion.

I. **BACKGROUND**

Petitioner was indicted in federal court for the following: conspiring to engage in illicit sexual conduct in foreign places in violation of 18 U.S. § 2423(e) (Count One);

traveling abroad with the intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b) (Counts Two, Four, Six, Eight, and Nine); engaging in illicit sexual activity in foreign places in violation of 18 U.S.C. § 2423(c) (Counts Three, Five, Seven, and Ten); and using a facility in foreign commerce to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b) (Counts Eleven and Twelve). Superseding Indictment, ECF No. 31.

The indictment stems from allegations that Petitioner engaged in sexual activity with ten young teenage boys during five trips he took to Moldova, Romania, and Cuba between December 2003 and March 2005. Counts Two and Three are based on Petitioner's December 2, 2003, trip from Philadelphia to Moldova. Counts Four and Five are based on a second trip to Moldova beginning on January 17, 2004. Counts Six and Seven stem from his trip to Cuba starting December 17, 2004. Counts Eight and Nine relate to his trip to Romania beginning on February 24, 2005. Count Ten relates to his February 24, 2005 trip to Romania. All boys were under their respective countries' age of consent when the supposed acts took place. The Government avers that Petitioner's modus operandi was to travel to impoverished villages and befriend local youths by spending money on them and

giving them gifts. Petitioner would then engage in sexual activity with the boys.

On August 3, 2007, a jury convicted Petitioner of all counts except Counts Six and Seven (the Cuba charges), which were dismissed during trial.[1] U.S. District Court Judge Bruce W. Kauffman sentenced Petitioner to 300 months of imprisonment, a lifetime of supervised release, a $50,000 fine, and a $1000 special assessment. J., ECF No. 285.

Petitioner appealed, alleging: (1) The government violated his constitutional rights by intentionally preventing a defense witness from appearing at trial; and (2) one of the statutes under which he was convicted, 18 U.S.C. § 2423(c), exceeded Congress's Commerce Clause authority. United States v. Bianchi, 386 F. App'x 156 (3d Cir. 2010), cert. denied, 131 S. Ct. 1044 (2011). The Third Circuit affirmed Bianchi's conviction. On the first issue, the court found that the evidence showed that Petitioner was not planning to call the individual in question as a witness and there would be no prejudice to Petitioner for the witness's absence. Id. at 159-60. On the second issue, the court determined that Congress did

---

[1] Due to the dismissal of Counts Six and Seven, all subsequent counts were renumbered to maintain consistency. Thus, Counts Eight, Nine, Ten, Eleven, and Twelve became Counts Six, Seven, Eight, Nine, and Ten, respectively.

not overstep its bounds in enacting § 2423(c). Id. at 160-62.

On January 24, 2012, Petitioner filed this timely, counseled § 2255 Motion. He also submitted an amended memorandum of law in support of the § 2255 Motion. Am. Mem., ECF No. 303. The Government responded, Gov't's Resp. 1, ECF No. 56, and the matter is now ripe for disposition.

**II. LEGAL STANDARD**

An evidentiary hearing regarding the merits of a prisoner's claim is necessary unless it is clear from the record, viewed in the light most favorable to the petitioner, that he is not entitled to relief. The Court must dismiss the claim "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." R. Governing § 2255 Proceedings for the U.S. Dist. Cts. 4(b).

**III. DISCUSSION**

Petitioner claims he received constitutionally ineffective assistance of counsel during his trial and at sentencing, and he also renews his constitutional challenge of § 2423(c). As to ineffective assistance of counsel, he has three claims. First, he avers that his counsel failed to object to the

4

verdict sheet containing the initials, as opposed to the full names, of the minor victims. Second, he argues that his counsel did not investigate the defense that his penile implant failed at the time of the offenses. Third, he claims that his counsel was ineffective for not structuring a cogent argument for a variance at sentencing. Based on Petitioner's § 2255 Motion and the evidence of record, the Court finds that there is no need for an evidentiary hearing and that Petitioner is not entitled to relief.

    A.    <u>Ineffective Assistance of Counsel Legal Standard</u>

The Sixth Amendment guarantees the right to effective assistance of counsel. <u>E.g.</u>, <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984). This principle likewise applies in collateral proceedings attacking a prisoner's sentence. <u>See</u> <u>Strickland</u>, 466 U.S. at 697-98.

To warrant reversal of a conviction, a convicted defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. <u>Id.</u> at 687; <u>Holland v. Horn</u>, 519 F.3d 107, 120 (3d Cir. 2008). To prove deficient performance, a convicted defendant must show that his "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at

5

688. The Court will consider whether counsel's performance was reasonable under all the circumstances. Id. Furthermore, the Court's "scrutiny of counsel's performance must be highly deferential." Id. at 689. That is, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Id. at 690. Next, the court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id. at 690.

To prove prejudice, a convicted defendant must affirmatively prove that the attorney's alleged errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

    B.    <u>Ineffective Assistance of Counsel Argument</u>

Petitioner raises three grounds in support of his

ineffective assistance of counsel claim. All of the grounds are meritless.

> 1. <u>Failure To Object to the Inclusion of the Boys' Initials on the Verdict Sheet at Trial</u>

First, Petitioner argues that his trial counsel provided ineffective assistance for "failing to object to the verdict sheet containing the initials of the alleged victims." Am. Mem. 10. Petitioner claims his trial counsel should have objected to the inclusion of the youths' initials instead of their actual names. He states that the jury could have concluded that their full names were omitted to portray them as victims. <u>Id.</u> at 9, 12.

This argument fails both <u>Strickland</u> prongs. First, as to the competency prong, the failure to object did not fall below an objective standard of reasonableness in that, even if an objection had been made, it would have been futile. 18 U.S.C. § 3509(d) requires that names of underage children, such as the six victims relied upon at trial, not be disclosed in the public record. The verdict sheet filed in the docket of the Court is a public record under the meaning of the statute.

Moreover, Rule 49.1(a)(3) of the Federal Rules of Criminal Procedure expressly commands the substitution of a

minor's initials in place of a full name in documents filed with the Court. Although the Rule had not yet taken effect at the time of the trial, it was known to the parties and the Court that the Rule had been enacted by the Judicial Conference, approved by the Supreme Court, and was before Congress for review under the Rules Enabling Act. Together, § 3509(d) and Rule 49.1 bespeak of a strong federal policy in favor of safeguarding the identity of minors in court filings which would have made it extremely unlikely that the Court would have sustained the proposed objection to the use of initials in lieu of full names.[2]

What is more, even assuming the first prong is satisfied, Petitioner fails to demonstrate that the use of the initials, rather than the full names, "actually had an adverse effect" on the outcome of the trial. Strickland, 466 U.S. at 693. Instead, the jury's verdict implies otherwise. Although all six boys were identified by initials, the jury distinguished among them and ultimately found that Petitioner had sexual relations with five of the six. Gov't's Resp. Ex. 1, at 2-4.[3]

---

[2] In fact, during his closing argument, the prosecutor explained to the jury that he would be referring to the six victims as boys without mentioning their names in order to protect their privacy. Trial Tr. 1253.

[3] At trial, six boys alleged that Petitioner engaged in

Given the jury's discriminating treatment of the various boys, Petitioner has not shown that using initials either cloaked the minors with a prejudicial label of "victims" or otherwise confused the jury. Thus, the use of initials did not undermine confidence in the verdict.

2. <u>Failure to Investigate the Failed Penile Implant as a Defense at Trial</u>

Second, Petitioner argues that his trial counsel rendered ineffective assistance because he failed to investigate a potential defense that Petitioner's penile implant failed at the time of the offenses. This argument is also unavailing. A failed penile implant is no defense to the charges involving conspiracy, traveling with intent to engage in illicit sexual conduct, and use of a facility in foreign commerce, because they do not rely on the Petitioner's ability to achieve penetration. Such a defense would only have bearing on the charges of

---

illicit sexual conduct with them. Three testified regarding Petitioner's first trip to Moldova (Count Three). Gov't's Resp. Ex. 1, at 2. The jury believed two of the three boys. <u>Id.</u> Three other victims testified as to Petitioner's illicit sexual conduct during his second trip to Moldova (Count Five). <u>Id.</u> at 3. The jury again believed only two of the boys. <u>Id.</u> Finally, one of the boys, whom the jury disbelieved as to Count Three, testified that Petitioner engaged in sexual conduct with him again during Petitioner's first trip to Romania (Count Eight). <u>Id.</u> at 4. Notwithstanding disbelieving his testimony regarding Count Three, it found this subsequent accusation sufficient to sustain a conviction. <u>Id.</u>

engaging in illicit sex in a foreign country.

However, none of the charges involving illicit sex acts depended on Petitioner's ability to sustain an erection. Each allegation of penetration was coupled with allegations of oral sex or allegations of attempt to commit illicit sexual conduct, such as sleeping in the same bed with some of the boys for the purpose of engaging in sexual conduct. Assuming that Petitioner is correct that his counsel failed to investigate any penile implant failure, he still cannot show prejudice because the evidence demonstrated that he engaged or attempted to engage in at least oral sex with five of the six boys whose allegations were presented to the jury.

### 3. Failure to Properly Argue for a Variance at Sentencing

Third, Petitioner argues that his counsel rendered ineffective assistance because he failed to articulate a cogent and structured argument for a variance or sufficiently address the § 3553(a) sentencing factors at sentencing. He avers that his counsel should have explored his psychopathology and brought in an expert to explain "why his client felt compelled to have sex with teenage boys." Am. Mem. 28.

This argument is also without merit. Petitioner fails

10

to specify the evidence that could have been presented to meet these so-called obligations. Alluding to the science of psychopathology and the need for expert witnesses in a general sense is insufficient to meet the burden to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.[4]

Furthermore, under the Sentencing Guidelines and at counsel's urging, the Court sustained thirteen objections to the Presentence Investigation Report (PSI), two of which led to a four-level reduction in the advisory guideline range. Sentencing Hr'g Tr. 46-67, 75-78 (sustaining objections to consideration of a foreign conviction in the PSI and characterization of a victim's intoxication as by force). Ultimately, while Petitioner under the guidelines was eligible to receive life in prison, which the Government requested, Petitioner's counsel was successful in arguing for a reduction in Petitioner's sentence to 300 months in prison. At the conclusion of the lengthy hearing in front of a patient judge, Petitioner stated on the record, "[E]verything I wanted to say I discussed with

---

[4] Petitioner concedes that, at the sentencing hearing, counsel provided "some comments that addressed the sentencing factors." Am. Mem. 28. This admission undermines his own argument.

11

[counsel], and he presented [the § 3553(a) argument] very eloquently." Sentencing Hr'g Tr. 95-96.

Thus, it plainly appears that Petitioner is not entitled to an evidentiary hearing, much less any other relief due to ineffective assistance of counsel.

C. Constitutionality of 18 U.S.C. § 2243(c)

Petitioner challenges his § 2243(c) convictions, claiming that Congress exceeded its constitutional authority in criminalizing activity occurring outside the U.S. He raised this challenge on direct appeal and the Third Circuit rejected it. Bianchi, 386 F. App'x at 160-62. Because Petitioner has already fully litigated this issue in trial and on appeal, he cannot raise it in a § 2255 motion absent countervailing equitable considerations. See Withrow v. Williams, 507 U.S. 680, 720 (1993) ("[A] prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim."); United States v. Orjuela, 639 F.2d 1055, 1057 (3d Cir. 1981) ("The reasons advanced in support of this rule are the strong policies favoring finality in litigation and the conservation of scarce judicial resources."); United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979) ("To permit relitigation here of the issues previously decided by this Court . . . would not further

12

the purposes of § 2255 and would result in wasteful duplication of the federal judicial review process."). Petitioner provides no reason to reconsider his constitutional challenge, and therefore the Court refuses to do so.

**IV. CERTIFICATE OF APPEALABILITY**

When a district court issues a final order denying a § 2255 motion, the Court must also decide whether to issue or deny a Certificate of Appealability (COA). See Section 2255 R. 11(a). The Court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (2012). To succeed under this standard, "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, an evidentiary hearing is not required because it plainly appears that Petitioner is not entitled to relief on any of the grounds raised. For similar reasons, Petitioner is also not entitled to a COA as he has not made a substantial showing of the denial of a constitutional right. Therefore, the Court will deny a COA.

**V.  CONCLUSION**

For the reasons provided, the Court will deny and dismiss with prejudice Petitioner's motion to vacate, set aside, or correct his sentence. A Certificate of Appealability will not issue.